IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| MENACHEM KUSHNERSKY, | CASE NO. 1:25-cv-2655 |
| Plaintiff, |  |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, |  |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Menachem Kushnersky filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to my jurisdiction in this case. Doc. 7. Following review, and for the reasons stated below, I affirm the Commissioner's decision.

**Procedural background**

*Previous application.* In March 2015, Kushnersky applied for disability insurance benefits alleging a disability onset date in January 2014.[1] Tr. 191, 212. An administrative law judge ("ALJ") denied Kushnersky's application. *See* Tr. 191. This Court, however, reversed the ALJ's decision and remanded the

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

case in *Kushnerski v. Saul*, Case No. 1:18-cv-01229, 2019 WL 4110451 (N.D. Ohio Aug. 29, 2019). The ALJ then held a new hearing in 2020 and issued another adverse decision, finding Kushnersky not disabled. Tr. 212. This Court affirmed. *See Kushnerski v. O'Malley*, Case No. 1:23-cv-904, 2024 WL 3218085 (N.D. Ohio June 28, 2024).

*Present application.* In April 2023, Kushnersky reapplied for disability insurance benefits, this time alleging a disability onset date of July 1, 2010. Tr. 309. Kushnersky claimed that he was disabled and limited in his ability to work due to insomnia, back spasms, "changed moods," anxiety, and schizophrenia. *See* Tr. 143, 345. The Commissioner denied Kushnersky's application initially and on reconsideration. *See* Tr. 250, 258. Kushnersky requested another hearing before an ALJ. Tr. 261.

In August 2024, a new ALJ held a telephonic hearing. *See* Tr. 157. Kushnersky appeared without counsel and testified with assistance from a Russian interpreter. Tr. 159–79. A qualified vocational expert, Aimee Mowery, also testified. Tr. 179–85. In December 2024, the ALJ issued a written decision finding that Kushnersky was not entitled to benefits. *See* Tr. 133–52.

Kushnersky appealed the ALJ's decision to the Appeals Council, Tr. 247, but the Appeals Council denied the appeal, making the ALJ's December 2024 decision the final decision of the Commissioner, Tr. 1; *see* 20 C.F.R. § 404.981.

Kushnersky timely filed this action in December 2025. Doc. 1. In it, he presents the following issue for review:

> Whether the Administrative Law Judge's findings and conclusions concerning the Plaintiff's residual functional capacity are supported by substantial evidence.[2]

Doc. 8, at 1.

### Evidence[3]

*Personal and Vocational Evidence*

Kushnersky was born in 1975, making him 44 years of age on his date last insured, December 31, 2019.[4] Tr. 150. Kushnersky completed high school in Russia, and he does not have relevant past work experience. *See* Tr. 150.

*Medical Evidence*

---

[2]     A residual functional capacity (RFC) is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[3]     The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs and relevant to their arguments.

[4]     To receive disability insurance benefits under Title II of the Social Security Act, an eligible claimant must establish disability on or before the date last insured. *See* 20 C.F.R. §§ 404.101, 404.130–31; *Savage v. Comm'r of Soc. Sec.*, 5:25-cv-762, 2025 WL 3484738, at *6 n.4 (N.D. Ohio Dec. 4, 2025); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Kushnersky's relevant time period in this case runs from his onset date, July 1, 2010, through his date last insured, December 31, 2019.

In December 2014, Kushnersky visited the neurological department at Cleveland Clinic. There, he had a consultative examination with Ilia Itin, M.D., for complaints of fatigue, anxiety, low mood, insomnia, and chronic low back pain. Tr. 609–11. Kushnersky also reported a history of hospitalizations for psychiatric problems, including insomnia, anxiety, and "intractable headache." Tr. 609. On exam, however, Kushnersky was alert and oriented to person, place, and date; had normal attention and concentration; normal memory; normal fund of knowledge; and normal language. Tr. 610. His physical examination also showed a normal gait, normal motor strength, and intact sensation. Tr. 610. Dr. Itin prescribed gabapentin for Kushnersky's back pain and ordered a brain MRI. Tr. 611 The MRI result was normal. Tr. 757–58.

In April 2015, Zyama Goldman, M.D., at Generations Behavioral Health conducted a psychiatric evaluation of Kushnersky. Tr. 869–72. She found that Kushnersky had a depressed and anxious mood with various symptoms, including tangential thinking, guarded behavior, preoccupation, and auditory hallucination. Tr. 870–71. She also assessed a global assessment of functioning (GAF) score of 35.[5] Tr. 871. Thereafter, Dr. Goldman followed up with

---

[5]     GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. *See American Psychiatric Association: Diagnostic & Statistical Manual of Mental Health Disorders, Fourth Edition, Text Revision. Washington*, DC, American Psychiatric Association, 2000, at 34. A GAF score between 61 and 70 indicates "some mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* In 2013, the Fifth Edition of the Diagnostic &

Kushnersky and treated him every two to five months until her retirement in 2022. Tr. 765–868. For much of this period, Dr. Goldman described Kushnersky as having tangential and circumstantial thoughts, often with paranoid or delusional content. *See, e.g.*, Tr. 837, 841, 845, 867. Kushnersky also often appeared depressed, anxious, and irritable, with poor or limited insight. *See* Tr. 845, 863. Dr. Goldman further noted that while Kushnersky was prescribed medication, he continued to have auditory hallucinations, to appear guarded, and to feel depressed and irritable. *See, e.g.*, Tr. 813–14, 833–34.

In July 2015, a psychologist, Joseph Konieczy, Ph.D., performed a consultative examination on Kushnersky. Tr. 432–34. Dr. Konieczy described Kushnersky's movements as "slightly slow and labored." Tr. 433. Although Kushnersky carried a cane with him to the examination, according to Dr. Konieczy, "he did not appear to use [the cane]" to walk. Tr. 433. Kushnersky also complained about back pain, but "[h]e did not appear to emphasize this symptom," despite otherwise being "quite elaborate in relating his symptoms." Tr. 433. In terms of mental health, Kushnersky did not show indications of undue impulsivity, and he denied experiencing difficulties in controlling his temper. Tr. 433. He also told Dr. Konieczny that he shopped on his own and

---

Statistical Manual of Mental Health Disorders was published, but it did not include the GAF. *See American Psychiatric Association: Diagnostic & Statistical Manual of Mental Health Disorders*, Fifth Edition, Arlington, VA, American Psychiatric Association, 2013, at 16.

managed his finances. Tr. 434. Kushnersky did report, however, episodes of mood swings and decreased energy level. Tr. 433.

Dr. Konieczy diagnosed Kushnersky with recurrent and moderate major depressive disorder with anxious distress. Tr. 434. He found no significant limitation in Kushnersky's ability to carry out and remember instructions. Tr. 434. Dr. Koncieczy also did not find significant limitations in Kushnersky's attention, concentration, and persistence when performing single and multi-step tasks. Tr. 434. Dr. Konieczy observed, however, declines in Kushnersky's frustration tolerance and in coping skills due to his depressive symptoms. Tr. 434. According to Dr. Konieczy, Kushnersky's depressive symptoms would affect Kushnersky's "ability to respond to typical supervision and interpersonal situations in the work setting." Tr. 434. Finally, Dr. Konieczy opined that Kushnersky's overall level of functioning is at a reduced level of efficiency, reflecting his depressive symptoms and his perceived physical limitations. Tr. 434.

In August and October 2015, Eric Mayer, M.D., examined Kushnersky for reports of cramps and intense spasms in his neck, thoracic spine, and lower back. Tr. 594. During his initial examination in August, Dr. Mayer found that Kushnersky had a normal gait, full muscle strength, normal reflexes, intact sensation, and a full range of cervical motion, but limited lumbar extension. Tr. 595–96. Although an MRI exam in October disclosed small tears and protrusions in Kushnersky's lumbar spine, Dr. Meyer reported that

Kushnersky's lumbar spine was overall "extremely well[-]preserved" and "better than would be expected given [Kushnersky's] age." Tr. 587. Kushnersky's rheumatology appointment also showed no evidence of synovitis or swelling in the joints, good range of motion, and full muscle strength and tone. Tr. 585.

In January 2016, Kushnersky went to an emergency room for "complaints of headache, spasms in the neck and head, and pain over [his] eye lid." Tr. 575. There, he told medical providers that the headache began two days before and felt as if his brain was shaking when he walked. Tr. 575. Kushnersky left the emergency room a few hours later as he was feeling better. Tr. 579. A provider noted that Kushnersky "denie[d] depressed mood" and showed "a normal mood and affect" during the ER visit. Tr. 577.

Later that month, Kushnersky had a neurological consultation at the Cleveland Clinic, where the provider, Jahangir Maleki, M.D., Ph.D, diagnosed him with chronic pain syndrome and myofascial pain dysfunction syndrome.[6] Tr. 574. Dr. Malecki also documented tenderness in all of Kushnersky's "distal extremity and paraspinal muscle groups" but found his gait and range of motion to be normal overall. Tr. 574. After the examination, Dr. Maleki

---

[6]     Myofascial pain syndrome refers to the "[i]rritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)." J.E. Schmidt, M.D., Attorney Dictionary of Medicine 4-M 7180 (Matthew Bender 2005); *see, e.g.*, *Orengo Acevedo v. Saul*, No. 3:19-cv-30083, 2020 WL 5260137, at *9 (D. Mass. Sept. 3, 2020); *Zendejas v. Astrue*, No. 08-CV-0633, 2009 WL 1883905, at *6 (W.D. Tex. June 29, 2009).

recommended Kushnersky only for a chronic pain rehabilitation program. Tr. 574.

Kushnersky continued to see Dr. Itin at the Cleveland Clinic. *See, e.g.*, Tr. 527, 545, 600. Kushnersky told Dr. Itin that taking gabapentin for his pain lessened his discomfort. Tr. 527, 545. He also took seroquel, which improved his sleep and mood. Tr. 547, 548. In November 2016, Dr. Itin noted that Kushnersky's depression "seem[ed] to be under better control." Tr. 548. By November 2017, according to Dr. Itin, Kushnersky was also "largely free of pain except occasional flare-up[s] of LBP [lower back pain]." Tr. 535.

In 2018 and 2019, Kushnersky's primary care providers described him as being cooperative, demonstrating normal mood and affect, and having normal thought content, cognition, memory, and judgment. *See, e.g.*, Tr. 452, 509, 525. He also showed a normal gait and normal range of motion during these appointments. Tr. 508–09. In his Function Report, dated May 2023, Kushnersky stated that he could pay bills, manage his savings account, communicate with his sister via Skype, and drive to get groceries once a week. Tr. 368–69. He continued to report, however, that he felt "lethargic, sleepy, fatigued, dizzy" and experienced "severe back pain, arms and legs pain, [as well as] body aches and pains." Tr. 364. Further, according to the Function Report, Kushnersky could not "sleep without medications for sleep" due to his anxiety, panic attacks, and depression. Tr. 363.

*Hearing testimony*

Kushnersky, without counsel, appeared by phone at an administrative hearing in August 2024. Tr. 159. With assistance from a Russian interpreter, Tr. 159, Kushnersky told the ALJ that he had not worked for 11 years because of his "severe health conditions"—which include chronic back spasm, leg pain, fatigue, anxiety, panic attack, Tr. 165, and insomnia, Tr. 174. He also had paranoia, which caused him to feel wiretapped or tracked by someone. Tr. 176. He denied any change in his conditions from his prior administrative hearing in 2020, stating, "[i]t's the same, same problems." Tr. 173. Additionally, although Kushnersky acknowledged that his medical record from the Cleveland Clinic described him as "healthy, clinically," he claimed that his providers were "lying [for] many years." Tr. 177, 178.

Kushnersky testified that his anxiety had kept him from functioning normally for the past 20 years, as it caused him to "feel bad" and "have slow reactions." Tr. 168–69. Due to his back problem, he also could not lift anything heavy or stand for an extended time. Tr. 176. He denied cooking or doing any chores around the house, except for "very little" driving to go to a supermarket with his children. Tr. 170. Kushnersky, however, said that he stopped going to the neurology department at the Cleveland Clinic because he was prescribed "the same medication" and did not "have anything new." Tr. 166. He took lurasidone for his mental health issues, Tr. 174, but claimed that the medication causes lethargy and headaches as side effects, Tr. 167–68. He denied seeing any mental health service provider other than Generations

Behavioral Health, which he had most recently visited the previous month. Tr. 174, 175.

Qualified vocational expert, Aimee Mowery, also testified. Tr. 179–85. The ALJ first asked Mowery whether a hypothetical individual could perform any work in the national economy if the individual had the limitations assessed in the ALJ's RFC determination. Tr. 181. Mowery responded that there would be multiple jobs in the national economy that the hypothetical individual could perform, such as garment sorter, inspector (or hand packer), and shipping and receiving weigher. Tr. 181–82. She further testified that at the sedentary exertional level, the individual could work as a jewelry preparer, a sorter, or an inspector. Tr. 182. The ALJ then qualified the hypothetical to assume that the same individual was "going to be absent or off task." Tr. 182. Mowery answered that most employers would tolerate off-task behavior "up to 10% in a workday" and allow "an annual range of 10 to 12 absences." Tr. 183. Mowery said that her answers would remain the same even if the ALJ required the hypothetical individual to avoid all exposure to heavy machinery and not to perform commercial driving. Tr. 183.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31, 2019.

2.  The claimant has not engaged in substantial gainful activity since July 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: degenerative disc disease; myofascial pain dysfunction disorder; chronic pain syndrome; major depressive disorder; schizophrenia; and a generalized anxiety disorder (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: the claimant could have frequently climbed ramps and stairs, but could have never climbed ladders, ropes, or scaffolds. He could have frequently kneeled and crouch. He could have occasionally stooped and crawl. The claimant could have never worked at unprotected heights. He could have occasionally worked in extreme heat and occasionally been exposed to vibration. Further, the claimant was able to perform simple tasks, but not at a production rate pace; such as production line work. He could have frequently interacted with supervisors

11

and coworkers, and occasionally interacted with the public. He could have adapted to routine workplace changes. Finally, the claimant required job duties that did not require arbitration, negotiation, conflict resolution, or management/supervision of others.

6.    The claimant has no past relevant work (20 CFR 404.1565).

7.    The claimant … was 44 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

Tr.  137–50.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the

national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence

14

supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*Substantial evidence in the record supports the ALJ's RFC assessment.*

Kushnersky "argues that the ALJ's analysis of [his] maximum [RFC] and of Social Security Ruling 16-3p are flawed and thus, not supported by substantial evidence." Doc. 8, at 12. In determining a claimant's RFC, an ALJ must consider all relevant evidence—including objective medical evidence as well as subjective evidence of pain or disability. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). In turn, when evaluating the claimant's subjective symptoms, the Social Security Ruling (SSR) 16-3p requires the ALJ to analyze the consistency of the claimant's statements with the other record evidence and consider the claimant's testimony about pain or other symptoms with other relevant evidence in the record and listed factors.[7]

---

[7] SSR 96-7p previously referred to this analysis as a "credibility" determination. In relevant parts, SSR 16-3p removed the word "credibility" from its predecessor and refocused the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective

15

In crafting an RFC, the ALJ must consider the restrictions alleged by the claimant. SSR 96-8p, 1996 WL 374184, at \*6. "Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002) (internal citations omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

Returning to the present case, Kushnersky specifically argues that the ALJ failed to "properly account for [his] symptoms including low frustration tolerance, limited coping skills, frequent delusions and auditory hallucinations" when formulating the mental RFC. Doc. 8, at 12. In support, Kushnersky highlights Dr. Konieczy's opinion, which noted Kushnersky's diminished tolerance for frustration and diminished coping skills. Doc. 8, at 12–13.

---

medical and other evidence in the individual's record." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at \*2 (SSA Oct. 25, 2017). Despite these changes, the procedures for reviewing an ALJ's assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. *See Delong v. Comm'r of Soc. Sec.*, No. 2:18-cv-368, 2019 WL 409364, \*7-8 (S.D. Ohio, Feb. 1, 2019). Courts agree that the prior case law involving SSR 96-7p generally applies to the renamed "consistency determination" under SSR 16-3p. *Whicker-Smith v. Comm'r of Soc. Sec.*, No. 1:18-cv-52, 2019 WL 911084, at \*5 (S.D. Ohio, Feb. 25, 2019), *report and recommendation adopted*, 2019 WL 1202361 (S.D. Ohio Mar. 14, 2019).

16

Unfortunately, Kushnersky's argument is misdirected because, "so long as substantial evidence supports the conclusion reached by the ALJ," it does not matter if substantial evidence also supports a claimant's position. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Put differently, whether substantial evidence supports the conclusion that Kushnersky could have been found disabled is irrelevant unless Kushnersky shows the *lack of* substantial evidence to support the ALJ's decision. *See Garens v. Comm'r of Soc. Sec. Admin.*, No. 5:22-cv-783, 2023 WL 2988456, at *8 (N.D. Ohio Mar. 13, 2023), *report and recommendation adopted*, 2023 WL 3602292 (N.D. Ohio May 23, 2023); *accord. Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

In any event, the ALJ sufficiently considered and discussed Kushnersky's symptoms when formulating the RFC.[8] *See* Tr. 146–49. Under SSR 16-3p, an ALJ undertakes a two-step process to assess the limiting effects of a claimant's symptoms. 2017 WL 5180304. At step one, "the ALJ will ask whether … there is an underlying medically determinable physical

---

[8]    To be clear, "[i]t is well-established [that] there is no requirement that the ALJ discuss each piece of evidence or limitation considered." *Thomas v. Bisignano*, No. 1:23-cv-00612, 2026 WL 376857, at *7 (N.D. Ohio Feb. 11, 2026), *report and recommendation adopted*, 2026 WL 775557 (N.D. Ohio Mar. 19, 2026); *see also Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (finding that an ALJ need not discuss every piece of evidence in the record). This is because "a duty to 'consider' the evidence is different than a duty to 'discuss' the evidence." *Swain v. Comm'r of Soc. Sec. Admin.*, Case No. 1:24-cv-2224, 2025 WL 2322785, at *7 (N.D. Ohio Aug. 12, 2025). Accordingly, as the Sixth Circuit has explained, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

17

impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)); SSR 16-3p, 2017 WL 5180304, at *3. At step two, "if … such an impairment exists," the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247; SSR 16-3p, 2017 WL 5180304, at *4. Under the step-two analysis, the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 16-3p, 2017 WL 5180304, at *4; 20 C.F.R. § 404.1529(c)(4). The ALJ may also consider several factors, including the claimant's daily activities, the nature of the claimant's symptoms, the claimant's efforts to alleviate the symptoms, the type, and efficacy of any treatment, and any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *4; 20 C.F.R. §§ 416.929(c)(3)(i)–(vi).

Kushnersky claims that the ALJ's decision lacked "any true discussion" under SSR 16-3p, Doc. 8, at 17, but the record belies this assertion. At step one, the ALJ found that Kushnersky's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 144. Moving to step two, the ALJ found that Kushnersky's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 143. In

18

support, the ALJ noted Kushnersky's own report that he "could pay bills, drive, and use a computer," but "rarely socializes with anyone" except for shopping in stores. Tr. 141; *see* SSR 16-3p, 2017 WL 5180304, at *4; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (instructing ALJs to consider the claimant's daily activities when assessing subjective symptoms). The ALJ also weighed Kushnersky's prescribed medication regimen and treatment history, Tr. 147; *see also* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v) (instructing an ALJ to consider type of medication and other treatments used to alleviate the claimant's symptoms), against the alleged severity of his physical and mental impairments, *see* Tr. 143; *see also* 20 C.F.R. § 404.1529(c)(3)(i) (instructing ALJs to consider "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"). In sum, the ALJ here properly followed SSR 16-3p in evaluating Kushnersky's subjective complaints regarding his physical and mental health.

Further, the ALJ's evaluation of Kushnersky's mental and physical symptoms is supported by substantial evidence, and his explanation is detailed enough to make clear the weight he gave to all relevant evidence and the reasons for that weight. In terms of mental health, the ALJ expressly considered Dr. Konieczny's opinion that Kushnersky had "diminished tolerance for frustration, and reduced coping skills, which would impact his ability to respond to typical supervision and interpersonal situations, and to respond to typical pressures in a work setting." Tr.150 (citing Tr. 434). The ALJ explained, however, that he did not assign great weight to this report

19

because Dr Konieczny failed to offer any vocationally relevant limitations other than Kushnersky's diminished effectiveness. Tr. 150. On the other hand, the ALJ agreed with Dr. Konieczny in finding that, despite minor deficiencies, Kushnersky had no significant limits "in his ability to understand, remember, and carry out instructions or maintain attention, concentration and persistence in single and multi-tasks." Tr. 150 (citing Tr. 434). To the extent that Dr. Konieczny's observation conflicted with Dr. Goldman's independent assessment of Kushnersky, the ALJ resolved the inconsistency by crediting Dr. Konieczny, noting his specialized training as a psychologist. Tr. at 148.

Similarly, as Kushnersky admits, the ALJ "discusse[d] evidence of record and provide[d] some reasons to support" his evaluation of Kushnersky's physical symptoms. Doc. 8, at 15. For example, the ALJ credited Dr. Itin's report that Kushnersky was "largely free of pain" with use of gabapentin in 2017 and continued to have "less discomfort" the following year. Tr. 145–46. He also considered primary care records showing that Kushnersky had a normal gait and normal range of motion as recent as in 2019. Tr. 146. The ALJ found that these medical records were consistent with Kushnersky's MRIs, which showed "no more than mild degenerative disc disease of the lumbar spine," but still gave "full consideration" to Kushnersky's statements regarding his pain and physical impairments when crafting the RFC. Tr. 203. Because the ALJ here discussed at length the evidentiary support for his RFC determination and resolved inconsistencies in the evidence, substantial

20

evidence supports the RFC. *Delgado*, 30 F. App'x at 547–48 (6th Cir. 2002) (internal citations omitted).

In maintaining that the ALJ failed to properly follow SSR 16-3p, Kushnersky cites multiple portions of the record mentioning his muscle spasm and tenderness, claiming that they are "consistent with [his] allegation of chronic pain." Doc. 8, at 15. Yet, as explained earlier, "[t]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273. Moreover, by arguing that the ALJ failed to consider certain records over others, Kushnersky essentially invites this Court to reweigh the evidence and substitute its own judgment for that of the ALJ. This Court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, 414 (6th Cir. 2011). This Court, therefore, declines Kushnersky's invitation.

**Conclusion**

For all the reasons stated, I affirm the Commissioner's decision.

Dated: July 8, 2026

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

21

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).